

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** |  |
| **Plaintiff,** | **NOV 1 3 2024** |
| **v.** | **THOMAS G. BRUTON**<br>**CLERK, U.S. DISTRICT COURT** |
| | **Case No.** |
| **EMPIRE HOLDINGS GROUP LLC**<br>**d/b/a ECOMMERCE EMPIRE**<br>**BUILDERS d/b/a STOREFUNNELS.**<br>**NET and PETER PRUSINOWSKI,** | **1:24-cv-11666**<br>**Judge Matthew F. Kennelly**<br>**Magistrate Judge Jeffrey Cole**<br>**RANDOM / CAT. 3** |
| **Defendants.** | |

## NOTICE OF FILING OF COMPLAINT AND STIPULATED PRELIMINARY INJUNCTION PURSUANT TO 28 U.S.C. § 754

By and Order of the United States District Court for the Eastern District of

Pennsylvania, in the matter captioned *FTC v. Empire Holdings Group LLC. et al.*,

No. 2:24-cv-04949-WB (E.D. Pa.), entered on November 8, 2024, I, Kevin Dooley

Kent, was appointed the receiver (the "Receiver") of all assets and properties of

Empire Holdings Group LLC, Star Active Sports LLC, Empire Partner Network

LLC, Atlas Fund Limited Partnership, Atlas Fund Trust, and Atlas Fund Land Trust.

Pursuant to 28 U.S.C. § 754, the Receiver hereby files copies of (a) the Complaint

filed on September 18, 2024 (excluding attachments pertaining to the *Ex Parte*

Motion for a Temporary Restraining Order) and (b) the November 8, 2024 Stipulated

Preliminary Injunction attached hereto as Exhibits "A" and "B," respectively, for the

purpose of vesting the Receiver with jurisdiction and control over all such property located within this District, with the right to take possession thereof.

Respectfully Submitted,

Dated: November 12, 2024

Kevin Dooley Kent, Receiver

*Pro se*

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION,

  Plaintiff,

    v.

EMPIRE HOLDINGS GROUP LLC, also d/b/a
ECOMMERCE EMPIRE BUILDERS and
STOREFUNNELS.NET, a limited liability
company, and

PETER PRUSINOWSKI, aka PETER PRU,
individually and as an officer of Empire Holdings
Group LLC,

  Defendants.

Case No. ___24-CV-4949___

**COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENT, AND OTHER RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint
alleges:

1.    The FTC brings this action for Defendants' violations of Section 5(a) of the FTC

Act, 15 U.S.C. § 45(a); the FTC's Trade Regulation Rule entitled "Disclosure Requirements and

Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule" or "Rule") 16

C.F.R. Part 437, as amended; and the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. §

45b. For these violations, the FTC seeks relief, including a temporary, preliminary, and

permanent injunction, monetary relief, and other relief, pursuant to Sections 13(b), and 19 of the

FTC Act, 15 U.S.C. §§ 53(b), 57b; the Business Opportunity Rule; and the CRFA.

### SUMMARY OF THE CASE

2.    Defendants deceptively market and sell ecommerce business opportunities and

self-study programs by falsely claiming that consumers will generate substantial income from

online stores that are "powered by artificial intelligence" and Defendants' "proven" strategies.

Defendants falsely promise that consumers will quickly earn $10,000 per month—and could

1

even make millions of dollars. In truth, the promised profits never materialize, and Defendants enrich themselves while leaving their clients with failed businesses that generate little, if any, profit. Defendants' income representations about their business opportunities and self-study programs are false or unsubstantiated.

3. When selling their business opportunities, Defendants use non-disparagement clauses in their form contracts that prohibit virtually all communications or statements about Defendants, which violate the Consumer Review Fairness Act. Defendants also fail to provide required statements and disclosure documents when selling their business opportunities, as required by the Business Opportunity Rule.

4. Since 2021, Defendants have deceived consumers out of at least $14.3 million.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

6. Venue is proper in this District under 28 U.S.C. § 1391 (b)(1), (b)(2), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

7. The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Business Opportunity Rule, 16 C.F.R. Part 437, as amended, which requires sellers to provide disclosure documents and prohibits false or unsubstantiated earnings claims. The FTC also enforces the CRFA, 15 U.S.C. § 45b(a)(2), which prohibits standardized provisions that threaten or penalize people for posting honest reviews.

2

## DEFENDANTS

8.      Defendant Empire Holdings Group LLC, also doing business as Ecommerce Empire Builders and Storefunnels.net, ("EEB") is a Wyoming limited liability company incorporated in 2018, with its principal place of business at 2370 York Rd., Jamison, Pennsylvania 18929. EEB transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, EEB has advertised, marketed, distributed, or sold self-study programs and business opportunities to consumers throughout the United States.

9.      Defendant Peter Prusinowski, also known as Peter Pru, is the Chief Executive Officer and sole owner of EEB. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of EEB, including the acts and practices described in this Complaint. Prusinowski is the public face of EEB, features prominently in the deceptive advertising for EEB's self-study programs and business opportunities, and appears often in its self-study program videos explaining EEB's purported ecommerce strategies. Prusinowski also opened and controls corporate bank accounts and web domains, signed consumer contracts containing non-disparagement clauses on behalf of EEB, and often directs consumers to contact him using his EEB email address. Prusinowski resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMERCE

10.      At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3

## DEFENDANTS' BUSINESS ACTIVITIES

11.     Since at least 2021, and continuing through the present, Defendants have been marketing business opportunities and also online self-study programs to consumers in this country and abroad through the internet, email, and social media platforms like Facebook, Instagram, TikTok, and YouTube.

12.     In both their self-study and business opportunity programs, Defendants promote a "dropshipping" business model. In the dropshipping model, an online store is created and offers products without keeping them in stock. When a shopper purchases the product from the online store, the product is then ordered from a third-party and shipped directly to the shopper. Defendants instruct clients to find cheap products from Chinese dropshipping companies and then market and sell them to shoppers at a higher price through the stores Defendants build for their clients.

### *Deceptive Advertising and Marketing of Defendants' Business Opportunities*

13.     Defendants market their business opportunities as "Done For You Services," "Business In A Box" and as their "Platinum Program." According to Defendants, these business opportunities are powered by artificial intelligence, and built and launched by Defendants' "seven figure" or "eight figure" team. Defendants claim that—in as little as thirty days—Defendants will "build and launch" a client's "very own cash-flowing online business" that is "a proven, secure and scalable system that's inflation resistant and has BIG tax advantages." Defendants promise to provide a "secondary income stream that's 90% hands off."

14.     In their marketing, Defendants assert that their business opportunities will allow clients to "Skip the guesswork and start a million-dollar business today" by harnessing the "power of artificial intelligence" and Defendants' strategies. Defendants frequently claim that their clients will make $10,000 a month in income and even millions of dollars.

4

15.    The cost of these business opportunities has changed over time. For example, Defendants have offered their business opportunities at different price points ranging between $10,000 and $35,000 over the course of their scheme.

16.    Defendants advertise and market their business opportunities online, including through Facebook, Instagram, TikTok, YouTube, and on the EEB's website, ecommercempirebuilders.com. Defendants' Facebook advertisements are posted from Prusinowski's account. Consumers who come across these advertisements see posts with headings like "Get An AI-Powered Ecom Store Built and Launched For You By Our 7-Fig Team."

17.    The Facebook advertisements frequently include videos making similar claims, and Prusinowski is the main speaker in these advertisements. For example, a Facebook advertisement posted by Prusinowski on December 6, 2023, advertises "An E-commerce Business Built and Launched By Our Team." In the video accompanying the advertisement, Prusinowski claims to have launched three online businesses in one week, which were already selling products and making money on their first day. Prusinowski explains how he accomplished this by finding hobbies listed on Wikipedia, reviewing bestselling items related to those hobbies on Amazon, and then finding and selling similar products related to those hobbies from foreign dropshipping companies like AliExpress and CJdropshipping. In this advertisement and throughout the entire video, a static screenshot shows notes with various earnings claims next to Prusinowksi while he is talking. As seen in the image below, in those notes, Defendants claim they will provide clients with a "10k/mo Ecom Store Built and Launched by our team." Defendants also claim that they have already built "57 $10k/mo stores," "34 $50k/mo stores," and "6 $1M+ per year stores," and Defendants claim they will complete all the necessary steps to provide clients with a "fully functional store."



18.     Defendants also advertise and market their business opportunities on Instagram

and TikTok. Defendants' Instagram account, ecommerce.empire.builders, has 4,043 posts and

118,000 followers, and drives consumer traffic to their website. Defendants' TikTok account,

@ecomm.empire.builders has 1,454 followers and 12,500 likes. Both profiles' descriptions

contain claims about building "AI-Powered" ecommerce businesses, and at the top of their

Instagram profile is a link to their website next to an emoji of a flying stack of money.

19.     As seen in the images below, Defendants' Instagram and TikTok posts also tout

earnings claims. For example, in one Instagram post, Prusinowski claims that consumers will be

able to "copy and paste a million-dollar ecommerce business in seven easy steps," while an

image that contains the phrase "$17,269,718.29 in total sales" floats behind his head. Similarly,

in a TikTok post Defendants tell consumers "Skip the guesswork and start a million-dollar

business today," while Prusinowski claims that starting "$1,000,000 Online Businesses Are

Simple" using Defendants' strategy. The thumbnail for this TikTok post also displays

Prusinowski claiming consumers only need one winning product to get started while an image

that says "$93.17k" floats above his head. Prusinowski closes out the advertisement by telling

interested consumers to "Comment '100k' down below" so they can start using his "seven figure

funnel template to start selling winning products today."



*Defendants' Use of Deceptive Business Opportunity Testimonials*

20.     Throughout Defendants' advertising and marketing, and on their websites,

Defendants use deceptive testimonials from purportedly successful clients of Defendants'

business opportunities. These testimonials often claim that clients are making thousands to tens

of thousands of dollars every month from the ecommerce stores Defendants built for them. For

example, some of these testimonials claim:

- "Selina Made $10,000 In Her Second Month With Our Ecommerce Platinum
  Program!" and Selina made "Her FIRST $10k With One Product Dropshipping!"

- "Natalia Made $10,000 In Her First Month With Our Ecommerce Platinum Program!" and Natalia made "10k Selling 1 Product"

- "Quanq Made $40,000 In Three Months With Our Ecommerce Platinum Program!" and Quanq went from "$0 to $40,000+ In ONLY 3 Months With Droppshipping Sales Funnels!"

- "Justin & Lindsay Made $12,000 In 12 Days With Their DFY Ecommerce Business"

### *Defendants' Free Training For Interested Consumers*

21.     Defendants' advertisements on Facebook, Instagram, and TikTok frequently include links for interested consumers to watch a free training video. Consumers who click on the links for Defendants' free "training" are directed to Defendants' website, where they are instructed to watch a twenty-minute video. This video features Prusinowski and contains similar claims to the ones Defendants use in their social media advertising. In the video, Prusinowski holds himself out as the CEO of EEB and tells prospective clients that he is going to teach them exactly what building their AI-powered ecommerce store and funnels in the next thirty days entails.

22.     While narrating the video, Prusinowski makes numerous earnings claims and uses deceptive testimonials. For example, within minutes of starting the free "training" video Defendants display screenshots of sales figures from allegedly successful clients of Defendants' business opportunities. Prusinowski claims many of the purported clients of Defendants' business opportunities are in Defendants' $10,000 a month club or $50,000 a month club, with some clients now making hundreds of thousands to millions of dollars.

23.     Prusinowski further explains who Defendants' business opportunities are for. Prusinowski claims that their business opportunities are for people working nine to five jobs that want to start making money online, existing ecommerce business owners who aren't making

8

enough money, people struggling to get their ecommerce businesses to work and make

predictable money, or anyone who has felt overwhelmed or previously tried to start an online

business and got no results. Further, Prusinowski claims that Defendants' business opportunities

are for anyone who wants to capitalize on AI, as seen in the image below.



24.     According to Prusinowski, EEB clients were able to optimize their ecommerce

stores and increase their revenues. With Defendants' funnels, Prusinowski claims that clients of

Defendants' business opportunities could see revenues as high as $31,910.00 per 1,000

customers, and $29,964 per year from only 100 monthly subscribers.

25.     In the free "training" video, Prusinowski continues to claim the businesses EEB

builds for consumers are "powered by artificial intelligence to make your life easier."

Prusinowski claims artificial intelligence has already been added into their store funnels and

consumers will be able to use it to "write[] copy, advertisements, emails, blog posts, articles,

customer service, etc." Prusinowski claims that aspects of a business that used to cost tens of

thousands of dollars are now all built into Defendants' programs with AI, saving clients money and increasing their profits.

26. At the end of Defendants' free "training" video, Prusinowski instructs consumers to click a hyperlink at the bottom of the webpage and fill out an application to qualify for Defendants' business opportunities. Before consumers reach the hyperlink, they must scroll through numerous additional false or unsubstantiated earnings claims, testimonials, and screenshots of purported profits from clients of Defendants' business opportunities. Once consumers click on the hyperlink to apply, they are brought to an online questionnaire that asks consumers for information about themselves, and other information about the sorts of outcomes they would like to achieve from using Defendants' business opportunities, in addition to how much money consumers are able to invest. Defendants then schedule a call with consumers to discuss in more detail.

### *Phone Calls With Defendants' Representatives*

27. During the scheduled calls, Defendants' representatives make additional false or unsubstantiated claims. Defendants' representatives explain how Defendants use dropshipping and discuss some of the different fees that will need to be paid after purchase. Defendants' representatives claim that Defendants will build the entire business for clients, do "all the product selection, 100 percent for you," and ensure clients' businesses are selling products within a month. Defendants offer prospective clients an automated ad management service and other packages that will purportedly help clients oversee marketing, use artificial intelligence, and have virtual assistants run all of the businesses' customer support. Defendants' representatives also claim that after they build the business for clients, clients will have access to "unlimited one-on-one calls with our team Monday through Friday where our team helps you through any question literally step-by-step."

28.     Defendants' representatives also discuss potential profits and other aspects of their businesses with prospective clients on these calls. Defendants' representatives talk about how consumers will bring in profits within thirty days of Defendants' building clients' businesses, and that clients' businesses will only take five to ten hours of work per week to run. Defendants' representatives claim that their profit margin goals are "30/40 percent profit" and "50 to 80 percent profit," and when discussing if it would be possible to make around $60,000 a year they stated, "it's definitely, definitely would be feasible . . . we have a hundred-plus people in the 100K club . . . that'd be over 10, 10k per month."

29.     After the calls conclude, Defendants then often send the prospective clients example funnels and their form contracts for their business opportunities.

30.     Consumers who purchase Defendants' business opportunities typically pay between $10,000 and $35,000. Prusinowski frequently signs Defendants' contracts as CEO of EEB, and Defendants require consumers to sign the contracts before they provide any of their business opportunity services.

### Deceptive Advertising and Marketing of Defendants' Self-Study Programs

31.     Defendants' self-study program (aka "Ecommerce Empire Academy") purports to provide instructional videos that teach clients everything that they need to know to create and implement their own online ecommerce stores, which Defendants claim will quickly start making thousands of dollars selling products online. The self-study program offers the same business strategies as the business opportunity program, except that the client is required to build the online store and business on their own. The self-study program typically costs between $997 and $1997.

32.     On Defendants' website, EEB purports to describe "Pete's flagship course that will teach you how to run an ultra-profitable eCommerce business using sales funnels and

11

scaling to high 6 & 7 figures!" and on another webpage claims "No Matter if it's an Extra $1000 a Month OR a 6-Figure Online Income, Ecommerce Empire Academy is YOUR FASTEST Path!" to success. Defendants claim that the Ecommerce Empire Academy is a proven system that can help people of all skill levels get "on the road to **replacing your full-time income.**"

33.     Consumers who purchase the Ecommerce Empire Academy are given a self-study program that is more resource-intensive and complex than Defendants represented prior to purchase. The self-study program takes many hours to review, and clients also need to spend significant amounts of time and effort implementing the strategies and instructions explained. Even after clients establish their own ecommerce store and funnels, it will be resource intensive for them to maintain. If they're actually able to do so, any income is uncertain, and the level of sales and revenues advertised on Defendants' website is far from likely.

### Earnings Claims for Defendants' Business Opportunities and Self-Study Programs Are False or Unsubstantiated

34.     The claims made by Defendants, and highlighted in their testimonials, are false or unsubstantiated. In truth, the results described in Defendants' advertising and marketing are far from typical, and Defendants' representations that consumers are likely to make substantial income have no reasonable basis.

35.     By their own admission, Defendants lack substantiation for their earnings claims that their business opportunities or self-study programs typically make thousands of dollars per month in additional income.

36.     Hidden at the bottom of one webpage Defendants state:

DISCLAIMER: The sales figures stated above are my personal sales figures. Please understand my results are not typical. I'm using these references for example purposes only. Your results will vary and depend on many factors…including but not limited to background, experience, and work ethic. All business entails risk as well as massive and consistent effort and action. If you're not willing to accept that, please DO NOT register for this webinar.

37.     This admission is neither clear nor conspicuous. To find this admission, consumers must scroll through numerous additional earnings claims and screenshots of purported profits and testimonials. This statement is also written in small light grey font, set against a black background.

38.     Defendants also admit elsewhere that the results described are not typical. Defendants state: "All businesses have inherent risk. Results not typical, results may vary. We cannot guarantee these results as they are dependent on the client's ability and desire to grow their business."

39.     Defendants' admissions directly contradict the earnings claims used by Defendants. Moreover, these statements do not cure the impression created by Defendants' use of deceptive earnings claims and testimonials—that clients of Defendants' business opportunities and self-study programs are likely to earn substantial income from their ecommerce stores.

40.     Aside from EEB's admission that it lacks substantiation, its business model, strategies, and tactics cannot guarantee the massive amount of income that EEB promises. After purchasing Defendants' business opportunities and self-study programs, clients generally discover that Defendants' claims of significant profit with little time and effort were d.

41.     Defendants understate the actual costs required to run and maintain a dropshipping business, especially ongoing marketing costs. After accounting for fixed costs needed to run and maintain EEB-built ecommerce stores, Defendants' online stores often lose money—even the stores Defendants tout as success stories.

42.     EEB's business strategies and tactics are much more complex and labor-intensive than described in Defendants' marketing before consumers paid EEB. Clients also report lack of communication from Defendants and poor explanations for underperforming stores.

43.     Numerous clients' stores have not generated sales close to what Defendants

13

claimed, and clients have lost additional money over time attempting to maintain their stores.

Clients are forced to pay previously undisclosed recurring fees—which further decreases any

revenue they might otherwise realize.

44. When clients seek refunds, or initiate chargebacks against Defendants,

Defendants challenge them. Defendants require clients who request refunds to first prove to

Defendants that they took specific steps to implement their services, and often do not refund

consumers or only refund them partially.

### Defendants' Contracts and Lack of Disclosure Documents

45. Defendants require that clients sign a form contract for their business

opportunities. Defendants' form contracts contain the following non-disparagement clause:

> Each Party agrees for itself and all others acting on its behalf, either directly or
> indirectly: (i) Not to publish, repeat, utter and/or report any statement or
> observation, nor to take, encourage, induce or voluntarily participate in any
> conduct or action, that would negatively comment and/or reflect on, disparage,
> defame, impugn and/or call into question any other Party and/or any other Party's
> business operations, policies, practices and/or conduct or that of its directors,
> officers, members, shareholders, agents, employees, and/or affiliates; (ii) Not to
> act in any way with respect to any other Party's business operations, practices,
> policies and/or conduct that would impugn and/or damage any other Party's
> reputation, business relationships or present or future business, or the reputation
> of any other Party's past or present directors, officers, members, executives,
> shareholders, agents, employees or affiliates; and (iii) Not to comment about any
> other Party to any person or entity, including, but not limited to, the press (in any
> medium or format) or any other Party's customers and/or vendors concerning any
> Party's business operations, policies or conduct and/or actions. All Parties
> acknowledge that this provision is a material term of this Agreement, the violation
> of which shall be deemed a material breach hereunder.

46. This non-disparagement clause prohibits or restrict clients' ability to write and

post truthful reviews of their negative experiences with Defendants' services.

47. Defendants also fail to provide prospective clients with a disclosure document

substantiating the earnings and profit claims that the companies made: (1) in their advertising

and marketing; (2) in materials provided to prospective clients; or (3) by representatives

communicating with the prospective clients. Further, Defendants fail to provide prospective clients with a list of customers and contact information of individuals who purchased their business opportunities within the last three years.

48.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things: Defendants engaged in their unlawful acts or practices over a period of at least three years, Defendants engage in their unlawful practices knowingly, Defendants continued their unlawful acts or practices despite knowledge of numerous complaints, and Defendants earned at least $14.3 million from participating in these unlawful acts or practices.

## VIOLATIONS OF THE FTC ACT

49.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

50.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

### Deceptive Earnings Claims

51.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' business opportunities and self-study programs, Defendants represent, directly or indirectly, expressly or by implication, that purchasers of Defendants' business opportunities and self-study programs are likely to earn substantial income.

52.     Defendants' representations as described in paragraph 49 are false or misleading or were not substantiated at the time the representations were made.

53.     Therefore, Defendants' representations as described in paragraph 49 constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE BUSINESS OPPORTUNITY RULE

54.     The amended Business Opportunity Rule, 16 C.F.R. Part 437, which was

extended in scope to cover certain work-at-home opportunities, became effective on March 1,

2012, and has since that date remained in full force and effect.

55.     Defendants are "sellers" who, as described in paragraphs 11 to 46, have sold or

offered to sell "business opportunities" as defined by the Business Opportunity Rule, 16 C.F.R. §

437.1(c) and (q). Under the Business Opportunity Rule, a "seller" is a person who offers for sale

or sells a business opportunity. 16 C.F.R. § 437.1(q). Under the Rule, a "business opportunity"

means a "commercial arrangement" in which a "seller solicits a prospective purchaser to enter

into a new business"; the "prospective purchaser makes a required payment"; and the "seller,

expressly or by implication, orally or in writing, represents that the seller or one or more

designated persons will…[p]rovide outlets, accounts, or customers, including, but not limited to,

Internet outlets, accounts, or customers, for the purchaser's goods or services[.]" 16 C.F.R. §

437.1(c).

56.     Among other things, the Business Opportunity Rule requires sellers to provide

prospective purchasers with a disclosure document in the form and using the language set forth

in the Business Opportunity Rule and its Appendix A, and any required attachments. In the

disclosure document, the seller must disclose to prospective purchasers five categories of

information, including: basic identifying information about the seller, any earnings claims the

seller makes, the seller's litigation history, any cancellation and refund policy the seller offers,

and contact information of prior purchasers. 16 C.F.R. § 437.3(a)(1)-(5). Furthermore, this

information must be disclosed at least (7) days before the prospective purchaser signs a contract

or makes a payment. 16 C.F.R. § 437.2. The pre-sale disclosure of this information enables a

prospective purchaser to contract prior purchasers and take other steps to assess the potential

risks involved in the purchase of the business opportunity.

57. Defendants, as described in paragraphs 13 to 30, have made earnings claims in connection with the sale of their business opportunities, as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(f). Under the Business Opportunity Rule, an "earnings claim" means "any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific level or range of actual potential sales, or gross or net income or profits." 16 C.F.R. § 437.1(f).

58. The Business Opportunity Rule prohibits sellers from making earnings claims unless the seller: (1) has a reasonable basis for the claim at the time it is made; (2) has in its possession written materials to substantiate the claim at the time it is made; (3) furnishes an Earnings Claim statement to prospective purchasers in conjunction with the disclosure document, containing, among other things, information regarding the time frame captured by the earnings claim, the characteristics of the purchasers, and the number and percentage of all persons who purchased the business opportunity within the time frame who achieved at least the stated level of earnings; and (4) makes written substantiation of the earnings claim available to any prospective purchaser who requests it. 16 C.F.R. § 437.4(a).

59. Defendants have also made earnings claims in connection with the sale of their business opportunities in the general media, as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(h). Under the Business Opportunity Rule, "general media" means "any instrumentality through which a person may communicate with the public, including, but not limited to, television, radio, print, Internet, billboard, Web site, commercial bulk email, and mobile communications." 16 C.F.R. § 437.1(h).

60. The Business Opportunity Rule prohibits sellers from making earnings claims in the general media unless the seller has a reasonable basis for and written substantiation of any

17

earning claims and states in immediate conjunction with those claims the beginning and ending dates when the represented earnings were achieved, and the number and percentage of all persons who purchased Defendants' business opportunity prior to that ending date who achieved at least the stated level of earnings. 16 C.F.R § 437.4(b).

61.     Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Business Opportunity Rule constitutes and unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### Misrepresentations Regarding Income or Profits

62.     In numerous instances in connection with the offer for sale, sale, or promotion of business opportunities, Defendants have misrepresented the amount of sales, or gross or net income or profits, a prospective purchaser may earn or that prior purchasers have earned.

63.     Therefore, Defendants acts and practices, as described in paragraph 60, violated the Business Opportunity Rule, 16 C.F.R. § 437.6(d), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### Earnings Claims to Prospective Purchasers Violations

64.     In numerous instances in connection with the offer for sale, sale, or promotion of business opportunities, Defendants have made earnings claims to prospective purchasers while, among other things: (1) lacking a reasonable basis for the earnings claim at the time it was made, (2) lacking written substantiation for the earnings claim at the time it was made, and (3) failing to provide an earnings claim statement to prospective purchasers as required by the Business Opportunity Rule.

65.     Therefore, Defendants' acts and practices, as described in paragraph 62 above,

18

violated the Business Opportunity Rule, 16 C.F.R. § 437.4(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

### Disclosure Document Violations

66.    In numerous instances in connection with the offer for sale, sale, or promotion of business opportunities, Defendants have failed to furnish prospective purchasers with a disclosure document and any required attachments within the time period prescribed by the Business Opportunity Rule.

67.    Therefore, Defendants' acts and practices, as described in paragraphs 64 above violated the Business Opportunity Rule, 16 C.F.R. §§ 437.2 and 437.3(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE CONSUMER REVIEW FAIRNESS ACT

68.    The CRFA defines "covered communication" as "a written, oral, or pictorial review, performance assessment of, or other similar analysis of, including by electronic means, the goods, services, or conduct of a person by an individual who is party to a form contract with respect to which such person is a party." 15 U.S.C. § 45b(a)(2).

69.    The CRFA defines "form contract" to mean "a contract with standardized terms (i) used by a person in the course of selling or leasing the person's goods or services; and (ii) imposed on an individual without a meaningful opportunity for such individual to negotiate the standardized terms." 15 U.S.C. § 45b(a)(3).

70.    Subsection (b) of the CRFA renders void any provision of a form contract if such provision prohibits or restricts the ability of an individual who is a party to the form contract to engage in a covered communication. 15 U.S.C. § 45b(b)(1).

71.    The CRFA prohibits any person from offering a form contract containing a

provision described as void in subsection (b) of the CRFA. 15 U.S.C. § 45b(c).

72. Pursuant to the CRFA, a violation of subsection (c) of the CRFA shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under Section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(b), and the FTC shall enforce the CRFA in the same manner, by the same means, and with the same jurisdiction, powers, and duties as the FTC Act. 15 U.S.C. § 45b(d).

73. Defendants have offered form contracts, as that term is defined in the CRFA. 15 U.S.C. § 45b(a)(3).

## COUNT V

### Violations of the CRFA

74. In numerous instances, as described in paragraphs 3, 9, and 43 to 46, Defendants have offered, in the course of selling their business opportunities, form contracts containing provisions that prohibit or restrict the ability of an individual who is a party to the form contract to engage in a covered communication.

75. Defendants have thereby violated the CRFA, 15 U.S.C. § 45b(c).

### CONSUMER INJURY

76. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the Business Opportunity Rule, and the CRFA. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

### PRAYER FOR RELIEF

Wherefore, the FTC requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act, the Business Opportunity Rule, and the CRFA by Defendants.

B.      Grant preliminary injunctive and ancillary relief as may be necessary to avert the

likelihood of consumer injury during the pendency of this action and to preserve the possibility

of effective final relief, including a preliminary injunction, an order freezing assets, and the

appointment of a receiver.

C.      Award monetary and other relief within the Court's power to grant.

D.      Award any additional relief as the Court determines to be just and proper.


Respectfully submitted,


Dated: September 18, 2024                    /s/Amanda Grier

                                             Amanda Grier (DC Bar No. 978573)
                                             Ryan McAuliffe (MD Bar No. 2012170072)
                                             Federal Trade Commission
                                             600 Pennsylvania Avenue, NW, CC-8543
                                             Washington, DC 20580
                                             (202) 326-3745; agrier@ftc.gov
                                             (202) 326-3044; rmcauliffe@ftc.gov

                                             Attorneys for Plaintiff
                                             FEDERAL TRADE COMMISSION

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>    Plaintiff,<br><br>    v.<br><br>EMPIRE HOLDINGS GROUP LLC, also d/b/a ECOMMERCE EMPIRE BUILDERS and STOREFUNNELS.NET a limited liability company; and<br><br>PETER PRUSINOWSKI, aka PETER PRU, individually and as an officer of Empire Holdings Group LLC,<br><br>    Defendants. | Case No. 24-CV-4949<br><br>**STIPULATED PRELIMINARY INJUNCTION** |

This matter comes before the Court upon the stipulation of all parties, including Plaintiff, the Federal Trade Commission ("FTC"), and defendants Empire Holdings Group, LLC, dba Ecommerce Empire Builders and Storefunnels.net, and Peter Prusinowski, aka Peter Pru (collectively, "Defendants") for the entry of a stipulated preliminary injunction as to all Defendants.

WHEREAS, on September 18, 2024, Plaintiff, the FTC, filed its Complaint for Permanent Injunction, Monetary Judgment, and Other Relief (Document No. 1) pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b; the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"), 16 C.F.R. Part 437, as amended; and the Consumer Review Fairness Act of 2016 ("CRFA"), 15 U.S.C. § 45b, and moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other

1

equitable relief, and order to show cause why a preliminary injunction should not issue against Defendants (Document No. 19).

WHEREAS, on September 20, 2024, after a hearing, the Court entered a Temporary Restraining Order against Defendants that includes an injunction, asset freeze, and appointment of a temporary receiver over the Receivership Entities (as defined below). (Document No. 19). Each of the above-named Defendants has been properly served with a summons, the Complaint, and the Temporary Restraining Order, and Plaintiff and Defendants stipulate to the entry of this Stipulated Preliminary Injunction.

WHEREAS, Plaintiff and Defendants negotiated and reached a stipulation as to the form of such a Preliminary Injunction.

**THEREFORE, IT IS STIPULATED AND ORDERED** as follows:

### FINDINGS OF FACT

The Court, having considered the Complaint, the Motion for a Temporary Restraining Order, declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds that:

A.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this District is proper.

B.      In numerous instances, Defendants, in the advertising, marketing, and selling of their self-study programs and business opportunities (Defendants' Products and Services), with Plaintiff alleging they have violated the FTC Act and rules governing their conduct. Specifically, Defendants have (1) made false, misleading, or unsubstantiated earnings claims, (2) violated multiple trade regulation rule provisions in selling Defendants' Products and Services, and (3)

violated the law by using non-disparagement clauses to discourage purchasers from publishing

truthful reviews about Defendants and Defendants' Products and Services.

C.      There is good cause based on Plaintiff's allegations to believe that Defendants

have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC

Act, 15 U.S.C. § 45(a); the FTC's Trade Regulation Rule entitled "Disclosure Requirements and

Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule" or "Rule"), 16

C.F.R. Part 437, as amended; and the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. §

45b, and the Plaintiff is therefore likely to prevail on the merits of this action. As demonstrated

by the evidence contained in the FTC's exhibits, the FTC established a likelihood of success in

showing that Defendants have made false, misleading, or unsubstantiated statements; engaged in

other unfair or deceptive acts or practices in the advertising, marketing, and sale of Defendants'

Products and Services; and violated the Business Opportunity Rule and CRFA.

D.      There is good cause to believe that Defendants have taken at least $14 million

from consumers in connection with their unlawful practices.

E.      There is good cause to believe that immediate and irreparable harm will result

from Defendants' ongoing violations of the FTC Act, the Business Opportunity Rule, and the

CRFA unless Defendants are restrained and enjoined by order of this Court.

F.      There is good cause to believe that immediate and irreparable damage to the

Court's ability to grant effective final relief for consumers—including monetary restitution,

rescission, or refunds—will occur from the sale, transfer, destruction, or other disposition or

concealment by Defendants of their assets or records, unless Defendants are immediately

restrained and enjoined by order of this Court.

G.      Good cause exists for continuing the appointment of the Receiver, Kevin Dooley

Kent, over the Receivership Entities, continuing the freeze on Defendants' Assets, permitting

Plaintiff and the Receiver immediate access to the Defendants' business premises, permitting

Plaintiff and the Receiver to take expedited discovery, and the other ancillary relief set forth in

this Order.

H.      Weighing the equities and considering Plaintiff's likelihood of ultimate success

on the merits, a preliminary injunction with an asset freeze, the continued receivership, expedited

discovery, and other equitable relief is in the public interest.

I.      This Court has authority to issue this Order pursuant to Sections 13(b) and 19 of

the FTC Act, 15 U.S.C. § 53(b); Fed. R. Civ. P. 65; and the All Writs Act, 28 U.S.C. § 1651.

J.      The FTC is an independent agency of the United States, and no security is

required of any agency of the United States for issuance of a preliminary injunction. Fed. R. Civ.

P. 65(c).

K.      Nothing in this Stipulated Preliminary Injunction prohibits or precludes

Defendants from raising any defenses, and this Order is not a waiver by Defendants of any

outstanding motions or defenses they may raise during the pendency of this action.

### DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      **"Asset"** means any legal or equitable interest in, right to, or claim to, any

property, wherever located and by whomever held.

B.      **"Corporate Defendant"** means EMPIRE HOLDINGS GROUP, LLC, d/b/a

Ecommerce Empire Builders and Storefunnels.net; and each of its subsidiaries, affiliates,

successors, and assigns.

4

C.     **"Defendants"** means the Corporate Defendant and the Individual Defendant, individually, collectively, or in any combination.

D.     **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contract, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

E.     **"Earnings Claim(s)"** means any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits. Earnings Claims include but are not limited to: (1) any chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; and (2) any statements from which a prospective purchaser can reasonably infer that he or she will earn a minimum level of income.

F.     **"Electronic Data Host"** means any person or entity in the business of storing, hosting or otherwise maintaining electronically stored information. This includes, but is not

limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

     G.    **"Individual Defendant"** means PETER PRUSINOWKSI, aka Peter Pru.

     H.    **"Receiver"** means the receiver appointed in Section XI of this Order and any deputy receivers that shall be named by the receiver.

     I.    **"Receivership Entities"** means Corporate Defendant as well as any other entity that has conducted any business related to the advertising, marketing, and sale of Defendants' Products and Services, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant, including but not limited to the entities Star Active Sports LLC, Empire Partner Network LLC, Atlas Fund Limited Partnership, Atlas Fund Trust, and Atlas Fund Land Trust.

**ORDER**

**I.    PROHIBITED BUSINESS ACTIVITIES**

     **IT IS THEREFORE ORDERED** that Defendants, Defendants' officer, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are restrained and enjoined from:

     A.    Making any Earnings Claims to a prospective purchaser, unless the Earnings Claim is non-misleading and, at the time the Earnings Claims is made, Defendants (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claimed earnings; and (3) make the written substantiation for Earnings Claims available upon request to the consumer, potential purchaser or investor, the Receiver, and the FTC;

6

B.      Failing to provide any consumer, potential purchaser, or investor with disclosure documents in the form and manner required by 16 C.F.R. §§ 437.2, 437.3(a)(1)-(5), and 437.4;

C.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, that Defendants' Products and Services will allow purchasers to earn a specific level or range of actual or potential sales, or gross or net income or profits, revenues, financial gains, percentage gains, or return on investment with little to no effort on their part;

D.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, that Defendants' Products and Services will use artificial intelligence to maximize revenues;

E.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics; and

F.      Prohibiting or restricting any consumer, potential purchaser, or investor from communicating reviews, performance assessments, and similar analyses about Defendants' Products and Services, or the conduct of Defendants; or that impose a penalty or fee against any consumer, potential purchaser, or investor who engages in such communications.

## II.     PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

A. Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B. Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency; to their attorneys as required for their defense; as required by any law, regulation, or court order; or in any filings, pleadings, or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

### III. ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and all other persons in active convert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1. owned or controlled, directly or indirectly, by any Defendant;

2. held, in part or in whole, for the benefit of any Defendant;

3. in the actual or constructive possession of any Defendant; or

8

4. owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant.

B. Opening or causing to be opened any safe deposit boxes, commercial mailboxes, or storage facilities titled in the name of any Defendant, or subject to access by any Defendant, except as necessary to comply with written requests from the receiver acting pursuant to its authority under this Order;

C. Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of the Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that his Order was signed, an authorized signor; or

D. Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

The Assets affected by this Section shall include: (1) all Assets of Defendants as of the time this Order is entered; and (2) Assets obtained by Defendants after this Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order. This Section does not prohibit any transfers to the Receiver or repatriation of foreign assets specifically required by this order.

9

## IV. RELEASE OF LIVING EXPENSES TO DEFENDANT PETER PRUSINOWSKI

**IT IS FURTHER ORDERED that,**

1) Defense Counsel Gordon Rees Scully Mansukhani, LLP ("GRSM") will transfer $18,642 currently frozen in Defendants' GRSM client trust account to the Receiver within three (3) business days of the entry of this Order.

2) Defendant Prusinowski is hereby authorized to access up to $30,000 in funds (the "Unfrozen funds") held by GRSM in its client trust account for personal expenses as set forth in his Personal Financial Disclosure submitted to Plaintiff FTC on September 25, 2024 ("Permissible Uses").

3) Once the Unfrozen Funds are transferred and expended by Prusinowski for the Permissible Uses, Prusinowski's counsel shall file a notice of compliance showing the receipt of the Unfrozen Funds and that the funds were allocated for Permissible Uses.

4) The remaining balance of $120,000 held by GRSM in its client trust account for future legal fees, pursuant to the Court's Order of November 4, 2024 (Doc. No. 43), may be transferred to a client trust account at Guardian Law, LLC to assist in the Defendants' defense.

## V. DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any Asset that has been owned or controlled, directly

or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Defendant, including through a credit card account, shall:

A.     Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court; provided, however, that this provision does not prohibit Individual Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B.     Deny any person, except the Receiver, access to any safe deposit box, commercial mailbox, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.     Provide Plaintiff's counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

1. The identification number of each such account or Asset;

2. The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

3. The identification of any safe deposit box, commercial mailbox, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.      Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to any account or Asset covered by this Section, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mailboxes, and storage facilities. Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this order.

## VI. FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, to the extent they have not already done so in compliance with the TRO previously issued in this matter (Document No. 19), within seven (7) days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and the Receiver:

A.      completed financial statements on the forms attached to this Order as **Attachment**

**A** (Financial Statement of Individual Defendant) for the Individual Defendant, and **Attachment**

**B** (Financial Statement of Corporate Defendant) for the Corporate Defendant; and

B.      completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return)

for both the Individual Defendant and the Corporate Defendant.

## VII.  FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that to the extent they have not already done so in

compliance with the TRO previously issued in this matter (Document No. 19), within five (5)

days following the service of this Order, each Defendant shall:

A.      Provide Plaintiff's counsel and the Receiver with a full accounting, verified under

oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of

the United State which are: (1) titled in the name, individually or jointly, of any Defendant; (2)

held by any person or entity for the benefit of any Defendant, or for the benefit of any

corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned,

managed or controlled by any Defendant; or (3) under the direct or indirect control, whether

jointly or singly, of any Defendant;

B.      Take all steps necessary to provide Plaintiff's counsel and Receiver access to all

Documents and records that may be held by third parties located outside of the territorial United

States of America, including signing the Consent to Release of Financial Records appended to

this Order as **Attachment D**;

C.      Transfer to the territory of the United States all Documents and Assets located in

foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2)

held by any person or entity for the benefit of any Defendant, or for the benefit of any

corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned,

managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

      D.     The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## VIII. NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

      A.     Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order; or

      B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order.

14

## IX. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning the

Individual Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. §

1681(a)(1), and that, upon written request, any credit reporting agency from which such reports

are requested shall provide them to Plaintiff.

## X. PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees,

and attorneys and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained

and enjoined from:

A.      Destroying, erasing, falsifying, writing over, mutilating, concealing, altering,

transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that

relate to: (1) the business, business practices, Assets, or business or personal finances of any

Defendant; (2) the business practices or finances of entities directly or indirectly under the

control of any Defendant; or (3) the business practices or finances of entities directly or

indirectly under common control with any other Defendant; and

B.      Failing to create and maintain Documents that, in reasonable detail, accurately,

fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of

Defendants' Assets.

## XI. REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained

and enjoined from creating, operating, or exercising any control over any business entity,

whether newly formed or previously inactive, including any partnership, limited partnership,

joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and

the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the

address and telephone number of the business entity; (3) the names of the business entity's

officers, directors, principals, managers, and employees; and (4) a detailed description of the

business entity's intended activities.

## XII. APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Kevin Dooley Kent is appointed as receiver of the

Receivership Entities with full powers of an equity receiver. The Receiver shall be solely the

agent of this Court in acting as Receiver under this Order.

## XIII. DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to

accomplish the following:

A.      Assume full control of Receivership Entities by removing, as the Receiver deems

necessary or advisable, any director, officer, independent contractor, employee, attorney, or

agent of any Receivership Entity from control of, management of, or participation in, the affairs

of the Receivership Entity;

B.      Take exclusive custody, control, and possession of all Assets and Documents of,

or in the possession, custody, or under the control of, any Receivership Entity, wherever situated;

C.      Take exclusive custody, control, and possession of all Documents or Assets

associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever

situated, including reserve funds held by payment processors, credit card processors, merchant

banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

D.      Conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities. The Receiver shall have full power to sue for, collect, and receive, all Assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of the Receivership Entities. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

E.      Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents. The Receiver shall: divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords, or other log-in credentials; take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely.

F.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

G.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

H.      Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

18

I.     Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web pages or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

J.     Enter into and cancel contracts and purchase insurance as advisable or necessary;

K.     Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

L.     Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

M.     Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal, or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

N.     Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

O.     Open one or more bank accounts at designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

P.     Maintain accurate records of all receipts and expenditures incurred as Receiver;

19

Q.      Allow Plaintiff's representatives, agents, and assistants, as well as Defendants'

representatives and Defendants themselves, reasonable access to the premises of the

Receivership Entities, or any other premises where the Receivership Entities conduct business.

The purpose of this access shall be to inspect and copy any and all books, records, Documents,

accounts, and other property owned by, or in the possession of, the Receivership Entities or their

agents. The Receiver shall have the discretion to determine the time, manner, and reasonable

conditions of such access;

R.      Allow Plaintiff's representatives, agents, and assistants, as well as Defendants and

their representatives, reasonable access to all Documents in the possession, custody, or control of

the Receivership Entities;

S.      Cooperate with reasonable requests for information or assistance from any state or

federal civil or criminal law enforcement agency;

T.      Suspend business operations of the Receivership Entities if in the judgment of the

Receiver such operations cannot be continued legally and profitably;

U.      If the Receiver identifies a nonparty entity as a Receivership Entity, promptly

notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's

determination by filing a motion with the Court. Provided, however, that the Receiver may delay

providing such notice until the Receiver has established control of the nonparty entity and its

assets and records, if the Receiver determines that notice to the entity or the parties before the

Receiver establishes control over the entity may result in the destruction of records, dissipation

of assets, or any other obstruction of the Receiver's control of the entity; and

V.      If in the Receiver's judgment the business operations cannot be continued legally

and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages

or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.

## XIV. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants and any other person with possession, custody, or control of property of, or records relating to, the Receivership Entities shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.   All Assets held by or for the benefit of the Receivership Entities;

B.   All Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.   All Documents of or pertaining to the Receivership Entities;

D.   All computers, electronic devices, mobile devices, and machines used to conduct the business of the Receivership Entities;

E.   All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

21

F.      All keys, codes, usernames, and passwords necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

G.      In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XV. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants, to the extent they have not already done so in compliance with the TRO previously issued in this matter (Document No. 19), shall immediately provide to the Receiver:

A.      A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.      A list of all agents, employees, officers, attorneys, servants, and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

C.      A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

22

## XVI. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, and attorneys; all other persons in active concert or participation with any of them; and any other person with possession, custody, or control of property of or records relating to the Receivership Entities who receive actual notice of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names, and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

## XVII. NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, attorneys; and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.      Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B.      Transacting any of the business of the Receivership Entities;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D.      Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XVIII. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants; Defendants' officers, agents, employees, attorneys; and all other persons in active concert or participation with any of them, who receive actual notice of this Order; and their corporations, subsidiaries, divisions, or affiliates; and all investors, creditors, stockholders, lessors, customers, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities, including, but not limited to:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.      Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C.      Filing or enforcing any lien on any asset of the Receivership Entities; taking or

attempting to take possession, custody, or control of any Asset of the Receivership Entities; or

attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership

Entities, whether such acts are part of a judicial proceeding, acts of self-help, or otherwise.

Provided, however, that this Order does not stay: (1) the commencement or continuation

of a criminal action or proceeding; (2) the commencement or continuation of an action or

proceeding by a governmental unit to enforce such governmental unit's police or regulatory

power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action

or proceeding by a governmental unit to enforce such governmental unit's police or regulatory

power.

## XIX. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver

as herein authorized, including counsel to the Receiver and accountants, are entitled to

reasonable compensation for the performance of duties pursuant to this Order and for the cost of

actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession

or control of, or which may be received by, the Receivership Entities. The Receiver shall file

with the Court and serve on the parties periodic requests for the payment of such reasonable

compensation, with the first such request filed no more than sixty (60) days after the date of

entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee

applications without prior approval of the Court.

## XX. IMMEDIATE PRODUCTION OF BUSINESS RECORDS

**IT IS FURTHER ORDERED** that that the Corporate Defendant shall allow the

Receiver and FTC's employees and agents access to the Corporate Defendant's business records

to inspect and copy Documents to identify and locate assets.

The Corporate Defendant shall, immediately upon receiving notice of this Order, to the extent they have not already done so in compliance with the TRO previously issued (Document No. 19), produce to the FTC for inspection, inventory, and copying, at a location designated by FTC, the following materials: (1) all customer information, including names, phone numbers, addresses, e-mail addresses, customer complaints, and payment information for all consumers who have purchased Corporate Defendant's business opportunities and coaching services; (2) all contracts, including settlement agreements with customers; (3) any correspondence, including electronic correspondence, that refers or relates to the Corporate Defendant's business opportunities and coaching services; (4) an electronic copy of all advertisements for the Corporate Defendant's business opportunities and coaching services; (5) all telephone and videoconferencing scripts used during the sales process; (6) all slide decks, sales projections, charts, and spreadsheets used during the sales process; (7) all Documents pertaining to Earnings Claims and other representations related to the marketing, advertising, promotion, offer for sale, or sale of Defendants' business opportunities and coaching services, including substantiation for any Earnings Claims; and (8) accounting information, including profit and loss statements, annual reports, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and 1099 forms. The FTC shall return any materials produced pursuant to this Section within seven (7) days of the Corporate Defendant's production.

## XXI. IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED that:**

A.      In order to allow Plaintiff and the Receiver to preserve Assets and evidence relevant to this action and to expedite discovery, Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, shall have immediate access to any business premises and storage facilities, owned, controlled, or used by the Receivership Entities. Such locations include any offsite location or commercial mailbox used by the Receivership Entities. The Receiver may exclude Defendants, Receivership Entities, and their employees from the business premises during the immediate access.

B.      Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Receivership Entities' premises in order that they may be inspected, inventoried, and copied. Plaintiff shall return any removed materials to the Receiver within five (5) business days of completing inventorying and copying, or such time as is agreed upon by Plaintiff and the Receiver;

C.      Plaintiff's access to the Receivership Entities' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff.

D.      Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state, and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

E.      If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a

location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and Receivership Entities shall produce to the Receiver all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access. In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

F.      If any communications or records of any Receivership Entity are stored with an Electronic Data Host, such Receivership Entity shall, immediately upon receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third-party to attempt to access, the communications or records.

### XXII. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries,

28

affiliates, successors, assigns, or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXIII. EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 33, 34, and 45, Plaintiff and the Receiver are granted leave, within 60 days of issuance of this Order, to conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' Assets; (2) the nature, location, and extent of Defendants' business transactions and operations; (3) Documents reflecting Defendants' business transactions and operations; or (4) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A.      Plaintiff and the Receiver may take the deposition of parties and non-parties. Forty-eight (48) hours' notice shall be sufficient notice for such depositions. The limitations and conditions set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A), and depositions may be taken by telephone or other remote electronic means;

B.      Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

C. Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days after Plaintiff serves such interrogatories;

D. Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service;

E. Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) and (f) of the Federal Rules of Civil Procedure.

## XXIV. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order as well as the Motion for Temporary Restraining Order and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, email, or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant, or any person (including any financial institution) that may have possession, custody, or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate, or office of any entity shall effect service upon the entire entity.

## XXVI. CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence

and service of pleadings on Plaintiff shall be addressed via email to Amanda Grier

(agrier@ftc.gov) and Ryan McAuliffe (rmcauliffe@ftc.gov).

## XXVII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**SO STIPULATED AND AGREED:**

**FOR ALL DEFENDANTS:**

/s/ Shawn McBrearty                          Date: 11/7/2024
Greg Christiansen (*pro hac vice*)
Guardian Law
833 E. Pioneer Rd. Ste. 102
Draper, UT 84020
Tel. (844) 409-1122
greg@guardianlaw.com

Shawn McBrearty
Sidkoff, Pincus & Green, P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107
Tel. (215) 574-0600
Fax: (215) 574-0310
smcbrearty@sidkoffpincusgreen.com

Clair E. Wischusen (Bar No. 306752)
Ryan M. Poteet (*pro hac vice*)
Stephan Freeland (*pro hac vice*)
Gordon Rees Scully Mansukhani, LLP
277 S. Washington Street, Suite 550
Alexandria, Virginia 22314
Tel. (202) 399-1009
Fax: (202) 800-2999
cwischusen@grsm.com
rpoteet@grsm.com
sfreeland@grsm.com

Counsel for Defendants
Empire Holdings Group LLC and
Peter Prusinowski

**FOR PLAINTIFF:**

/s/Amanda Grier                          Date: 11/7/2024
Amanda Grier (DC Bar No. 978573)
Ryan McAuliffe (MD Bar No. 2012170072)
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-8543
Washington, DC 20580
Tel. (202) 326-3745
Fax: (202) 326-3044
agrier@ftc.gov
rmcauliffe@ftc.gov
*Attorneys for Plaintiff*
*Federal Trade Commission*

**FOR RECEIVER:**

*/s/ Robin S. Weiss*                      Date: 11/7/2024
Robin S. Weiss, Esquire
Vanessa L. Huber, Esquire
Clark Hill PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Tel. (215) 640-8500
Fax: (215) 640-8501
rsweiss@clarkhill.com
vhuber@clarkhill.com
*Attorneys for Receiver, Kevin Dooley Kent*

**SO ORDERED** this 8th day of November        , 2024

*/s/ Wendy Beetlestone*
_____
WENDY BEETLESTONE, J.
UNITED STATES DISTRICT JUDGE

32

